47 F.3d 277
 31 Fed.R.Serv.3d 27
 Valerie K. SYLLA-SAWDON, individually and as personal
representative of the estate of Jesse Daniel
Durmon, decedent, a minor, Appellant,
v.
UNIROYAL GOODRICH TIRE COMPANY, a Delaware corporation, Appellee.
 No. 94-2267.
 United States Court of Appeals,
Eighth Circuit.
 Feb. 7, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied March
22, 1995.
 
 1
 William H. Pickett, Kansas City, MO. David T. Greis appeared on the brief, for appellant.
 
 
 2
 Michael W. Rhodes, Kansas City, MO. Peter F. Daniel appeared on the brief, for appellee.
 
 
 3
 Before MAGILL, Circuit Judge, BEAM, Circuit Judge, and PIERSOL,* District Judge.
 
 
 4
 PIERSOL, District Judge.
 
 
 5
 Valerie K. Sylla-Sawdon, individually and as personal representative of the estate of her deceased minor son, Jesse Daniel Durmon, appeals from the judgment entered by the district court[1] following a jury verdict in favor of Uniroyal Goodrich Tire Company (Uniroyal), and from the district court's denial of her new trial motion. For the reasons discussed below, we affirm.
 
 
 6
 On August 15, 1989, Sylla-Sawdon and her six-year-old son, Jesse Durmon, Michigan residents, were riding as passengers in a 1984 Mazda driven by Sylla-Sawdon's mother, Yvonne Kirby, on a trip from Michigan through Missouri enroute to Arizona. Sylla-Sawdon sat in the right front passenger seat, and Jesse sat in the rear center passenger seat. As Mrs. Kirby drove westbound on Interstate 44 near Joplin, Missouri, the left rear tire on the car blew out. Mrs. Kirby lost control of the car, which crossed the median and rolled at least twice. Jesse sustained severe injuries that resulted in his death. The accident occurred just after 6 o'clock in the evening. It was still daylight, and the road was level and dry. Missouri Highway Trooper Bobby Smiles, who responded to the accident scene, did not find any roadway obstruction that could have contributed to the accident. He checked the box for "vehicle defect" on his accident report.
 
 
 7
 Sylla-Sawdon filed suit in Missouri state court alleging claims for wrongful death and strict liability against several defendants. Uniroyal removed the action to federal court. Sylla-Sawdon voluntarily dismissed all defendants except Uniroyal prior to trial. Following a three-day trial, the district court submitted to the jury plaintiff's individual claim and her claim as personal representative of her son's estate. The jury returned verdicts for Uniroyal. Upon denial of her motion for a new trial, Sylla-Sawdon timely appealed, and she now raises five issues.
 
 
 8
 I. Sanction for Failure to Preserve Evidence
 
 
 9
 Title to the Mazda transferred from Mrs. Kirby to her insurer, Metropolitan Property and Liability Insurance Company (Metropolitan), in return for payment of property loss benefits. On December 5, 1989, former attorneys for Sylla-Sawdon inspected the Mazda at the Missouri salvage yard where it was taken after the accident. The inspection report prepared on December 5 described the three Uniroyal "Big O, Legacy" tires that remained on the car, and noted that the fourth tire had been replaced with a short mileage spare.[2] The inspectors asked a mechanic to remove certain seat belt assemblies, but they took no steps to acquire the remaining tires. On December 15, 1989, Metropolitan sold the car as salvage. On April 12, 1991, Sylla-Sawdon's current attorney bought the car, but by then the front tires had been removed.
 
 
 10
 Uniroyal's inability to examine the front tires became an issue when Uniroyal learned through sales invoices disclosed in discovery that Mrs. Kirby had purchased two of the four tires on July 6, 1987, and the other two on June 23, 1988. Uniroyal sought to establish conclusively, by tread wear analysis or by the "DOT numbers" molded on the tires, that the tire which failed was one of the older tires and had more mileage on it. In her videotaped deposition, later shown at trial, Mrs. Kirby agreed it was probable that the damaged tire was one of the two older tires. Sylla-Sawdon produced no other evidence to show that the damaged tire was one of the two newer ones purchased in June 1988.
 
 
 11
 As a sanction for plaintiff's failure to preserve the three undamaged tires as evidence, Uniroyal moved to exclude any evidence that the damaged tire was purchased in 1988. Over plaintiff's objection, the district court granted the motion, finding that Sylla-Sawdon, through her attorneys, knew the front tires existed in December 1989, but she failed to preserve them when she had the opportunity to do so. The district court instructed the jury that the damaged tire was purchased on July 6, 1987.
 
 
 12
 Sylla-Sawdon argues that the erroneous imposition of this sanction requires a new trial. The parties agree that a district court has discretion to impose a sanction under its inherent disciplinary power. Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir.1993). Sylla-Sawdon argues, reasoning from Beil v. Lakewood Eng'g and Mfg. Co., 15 F.3d 546, 552 (6th Cir.1994), that the automobile was not within her possession or control at the time the tires remained on it in December 1989, as the auto was then owned by Mrs. Kirby's insurer and was in the custody of a salvage dealer. She further argues that, in December 1989, her attorneys were contemplating a possible lawsuit alleging a seatbelt defect rather than a tire defect, and their focus at that time explains why they acquired seatbelt mechanisms, but not the tires, from the car. She argues she should not have been penalized for failing to preserve the remaining three tires.
 
 
 13
 Uniroyal argues the district court committed no clear error in ruling that the damaged tire was purchased on July 6, 1987. Uniroyal contends that sanctions are intended in part as a deterrent, and no deterrent effect is achieved if a plaintiff, who controls the date a lawsuit is brought, can destroy evidence freely until an action is filed. Uniroyal stresses that the proper analysis, followed by the district court, is whether the plaintiff knew or should have known of the evidence, had the opportunity to preserve it, and failed to do so, citing e.g., American Family Ins. Co. v. Village Pontiac GMC, Inc., 223 Ill.App.3d 624, 166 Ill.Dec. 93, 96, 585 N.E.2d 1115, 1118 (1992) (affirming spoliation sanction against plaintiffs, including those who no longer owned or possessed car, because "plaintiffs intentionally allowed" car to be destroyed by salvage dealer after title transferred to insurer). Uniroyal also argues that, in December 1989, Sylla-Sawdon's former attorneys did consider a tire defect lawsuit, and they could have acquired the tires for a nominal sum when they obtained the seatbelt assemblies. Thus, Uniroyal argues the sanction was properly imposed.
 
 
 14
 We review the district court's imposition of a sanction under its inherent power, as well as the factual basis for the sanction, for an abuse of discretion. See Dillon, 986 F.2d at 267 (citations omitted). Our review is very deferential, and generally we will not interfere with the great latitude exercised by the district court in discovery matters. SDI Operating Partnership v. Neuwirth, 973 F.2d 652, 655 (8th Cir.1992).
 
 
 15
 We find no abuse of discretion in this instance. The tires remaining on the vehicle were critical to this litigation because only an examination of all four tires would conclusively establish the date of purchase of the failed tire and the mileage that was on it at the time of the accident. See Dillon, 986 F.2d at 267 (holding sanction is appropriate if court finds destruction prejudiced opposing party). Plaintiff's own witness, Mrs. Kirby, testified that it was probable the damaged tire was one of the older tires. The record reflects that, at the time of the December 1989 inspection, plaintiff's former attorneys were well aware that the cause of the fatal accident was tire failure and that the attorneys were contemplating a lawsuit claiming tire manufacturing defect. Therefore, they knew or should have known that all of the tires would be relevant and should be preserved as evidence.
 
 
 16
 Like the district court, we reject Sylla-Sawdon's contention that she did not have ownership or custody of the car and thus, she could not preserve the evidence. Through her former attorneys, she obtained the seatbelt assemblies. Similarly, she could have acquired the remaining tires. Based upon the information before it, the district court did not abuse its discretion in setting the July 6, 1987 date of purchase as a sanction for plaintiff's failure to preserve the tires. See Dillon, 986 F.2d at 267; SDI Operating Partnership, 973 F.2d at 655.
 
 II. Highway Patrol Report
 
 17
 Sylla-Sawdon next argues that the district court abused its discretion in admitting into evidence over her objection the accident report completed by Trooper Smiles because the report contained hearsay statements. She argues, citing Meder v. Everest & Jennings, Inc., 637 F.2d 1182, 1187 (8th Cir.1981), that the district court should not have admitted the report into evidence as a business record under Federal Rule of Evidence 803(6) because the source of information in the report was unknown and because there was no testimony about when or under what circumstances the information was obtained. She also contends that the district court abused its discretion (1) in permitting Trooper Smiles to testify at trial as to statements made to him by Mrs. Kirby regarding the vehicle's speed just prior to the accident and Jesse's failure to use a seatbelt and (2) in permitting Trooper Smiles to testify that a vehicle defect other than the tire failure caused the accident.
 
 
 18
 Uniroyal responds that the parties stipulated to admission of the report as a business record, and alternatively, the report was admissible as a public record under Federal Rule of Evidence 803(8). Uniroyal distinguishes Meder on the ground that both the source of the information and the circumstances under which Trooper Smiles received the information are known, while in Meder neither the source nor the circumstances were known. Uniroyal contends the district court allowed Trooper Smiles to testify only as to his personal knowledge or information obtained from witnesses at the scene. Regarding seatbelt use, Uniroyal argues that plaintiff injected the issue into the trial through Mrs. Kirby's videotaped deposition, and it was entitled to impeach her testimony with evidence of a prior contradictory statement. Uniroyal states that it did not argue to the jury that failure to wear a seatbelt is a defense to strict liability. Finally, Uniroyal argues that Trooper Smiles testified he checked the "vehicle defect" box on his report because he was referring to the tire that failed, and he did not express an opinion as to whether the tire was defective when manufactured.
 
 
 19
 We have reviewed the accident report contained in the record, but Sylla-Sawdon has not included within the record on appeal a transcript of Trooper Smiles' testimony. Therefore, we are unable to read his testimony and consider the district court's rulings in context. Accordingly, the lack of a transcript precludes us from conducting any meaningful review of these issues. See Fed.R.App. 10; Schmid v. United Bhd. of Carpenters & Joiners, 827 F.2d 384, 386 (8th Cir.1987) (per curiam), cert. denied, 484 U.S. 1071, 108 S.Ct. 1041, 98 L.Ed.2d 1004 (1988).
 
 III. Expert Testimony
 
 20
 The district court's Scheduling Order required in part as follows:
 
 
 21
 (2) Each party shall disclose to every other party any evidence that the party may present at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence. This disclosure shall be in written affidavit form, prepared and signed by the witnesses and shall include a complete statement of all opinions to be expressed, and the basis and reasons therefor; the data or other information relied upon in forming such opinions; any exhibits to be used as a summary of or support for such opinions; the qualifications of the witness; and a listing of any other cases in which the witness has testified as an expert at trial or in deposition within the preceding five (5) years.
 
 
 22
 (Appellant's App. at 30.) Sylla-Sawdon designated as an expert witness H. Boulter Kelsey, Jr., a mechanical engineer from St. Louis, Missouri. Kelsey submitted a short affidavit in response to the Scheduling Order.[3] He attached to the affidavit a copy of his curriculum vitae, which showed academic, teaching, and professional experience in mechanical engineering, including "forensic engineering analysis of structural and mechanical defects in design, manufacture, and operation" and "analysis and accident reconstruction in industrial safety, vehicular failure, and product liability." The curriculum vitae also disclosed that Kelsey belongs to many professional organizations and the Sports Car Club of America, and that he held regional and national racing licenses before he retired from active racing competition. The affidavit and curriculum vitae did not divulge any direct professional experience in tire manufacture or tire failure analysis. In contrast, Uniroyal's expert, Richard Harrison, submitted a five-page affidavit which set out in detail the tire examination he conducted in this case, along with the basis for his opinion that the tire failure resulted from a prior severe impact to the tire. Harrison's curriculum vitae revealed extensive professional experience in tire manufacture.
 
 
 23
 Uniroyal notified Sylla-Sawdon that it did not believe Kelsey's summary affidavit complied with the Scheduling Order. When Kelsey did not supplement the affidavit, Uniroyal deposed him. At the deposition, Kelsey testified that he did not consider himself an expert in rubber chemistry, tire design, or the tire manufacturing process. He testified that he does not have any formal training in tire failure analysis and that his employment history bears no relationship to the knowledge he relied upon to reach his opinion in this case. Kelsey explained that his knowledge of tire failures arises from his many years of experience as a competitive race car driver, combined with his mechanical engineering background.
 
 
 24
 Uniroyal filed a motion in limine to exclude or limit Kelsey's testimony at trial. Uniroyal argued, under Federal Rule of Evidence 702, that Kelsey was not qualified by knowledge, skill, experience, training, or education to render an opinion as to whether the tire failed due to a manufacturing defect. Uniroyal also contended that Kelsey's testimony should be excluded under Federal Rule of Evidence 403 as more prejudicial than probative.[4] At the hearing on the motion in limine, Sylla-Sawdon's counsel argued that Kelsey should be permitted to testify under Rule 702 because his specialized knowledge would help the jurors understand what caused the tire to fail.
 
 
 25
 Having read Kelsey's deposition, the district court sustained the motion in limine in part and overruled it in part. The court ruled that Kelsey could testify, but only as to the limited content of his affidavit and "nothing else." The district court observed that Kelsey had "taken rather lightly" the court's Scheduling Order and remarked that Kelsey was a "very weak expert." In response to Uniroyal's request for clarification of the ruling, the court stated:[T]hat doesn't mean to say that I am going to qualify him as an expert. You can still object when [plaintiff's counsel] goes through his testimony whether he can qualify him in front of the jury as an expert. I am not ruling on that, I am ruling on what he can testify to, if he gets qualified. You have got to qualify him as an expert.
 
 
 26
 (Appellant's App. at 270.)
 
 
 27
 At trial, Sylla-Sawdon called Kelsey to the stand and attempted to qualify him as an expert by probing into his experience with tire failures that had not been revealed in his affidavit and curriculum vitae. Uniroyal repeatedly objected, and the district court sustained nearly all of the objections.[5] As a result, Sylla-Sawdon failed to qualify Kelsey as an expert before the jury, and Kelsey was not permitted to give his opinion that the tire failed because of a manufacturing defect. In denying Sylla-Sawdon's motion for a new trial on this issue, the district court ruled that plaintiff had "flagrantly disregarded" the court's Scheduling Order. Sylla-Sawdon now argues that the district court's trial rulings are reversible as an abuse of discretion.
 
 Federal Rule of Evidence 702 states:
 
 28
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 29
 We have said that "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." Fox v. Dannenberg, 906 F.2d 1253, 1256 (8th Cir.1990). Thus, we acknowledged in Fox that "an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise." Id. We also observed in Fox that "[t]he threshold question of whether a witness is competent as an expert is solely for the trial judge, and, as the text of Rule 702 suggests, the central issue is whether the expert's testimony will assist the trier of fact." Id. "Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility." Id.; Williams v. Pro-Tec, Inc., 908 F.2d 345, 348 (8th Cir.1990); Davis v. American Jet Leasing, Inc., 864 F.2d 612, 614-15 (8th Cir.1988); Nielson v. Armstrong Rubber Co., 570 F.2d 272, 276-77 (8th Cir.1978).
 
 
 30
 Based upon our reasoning in Fox, Sylla-Sawdon urges us to reverse and remand this case for a new trial so that another jury may have the benefit of Kelsey's opinion in deciding this case. Her request essentially asks us to ignore her expert's cursory response to the district court's Scheduling Order, and this we decline to do. Sylla-Sawdon failed to qualify Kelsey as an expert because he did not abide by the Scheduling Order and Rule 26(a)(2)(B), although we speculate that plaintiff may have had difficulty qualifying Kelsey as an expert in tire failure analysis even if his pretrial submission had complied with the Scheduling Order. See Garnac Grain Co. v. Blackley, 932 F.2d 1563, 1566 (8th Cir.1991) (affirming district court's decision not to qualify as experts two witnesses who lacked formal training and possessed limited practical knowledge and experience in subject area of proffered expert testimony).
 
 
 31
 Federal Rules of Civil Procedure 16(f) and 37(b)(2)(B) "authorize district courts to prohibit the admission of evidence proffered by the disobedient party." United States v. 68.94 Acres of Land, 918 F.2d 389, 396 (3d Cir.1990); Smith v. Rowe, 761 F.2d 360, 366 (7th Cir.1985) (same). "The power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential" to judicial management of the case. Admiral Theatre Corp. v. Douglas Theatre Co., 585 F.2d 877, 897-98 (8th Cir.1978). We do not agree with Sylla-Sawdon that Kelsey's affidavit complied with the district court's Scheduling Order. The affidavit lacked the specificity required by the Scheduling Order and thus failed to give Uniroyal advance notice of Kelsey's qualifications and the substance of his testimony so that Uniroyal could prepare to meet the testimony at trial. See Miller v. Fairchild Indus., Inc., 885 F.2d 498, 512 (9th Cir.1989), cert. denied, 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990).
 
 
 32
 The failure to comply with the Scheduling Order is not excused because Uniroyal elected to depose Kelsey. At the time the district court entered its Scheduling Order, Federal Rule of Civil Procedure 26 did not require the disclosure of such a report. In 1993, however, Rule 26 was amended to require parties to disclose pretrial expert witness reports similar in nature to the expert witness affidavit the district court required in this case. The commentary to the amended Rule echoes the district court's stated rationale for requiring expert reports: the elimination of unfair surprise to the opposing party and the conservation of resources:
 
 
 33
 The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness. Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed....
 
 
 34
 ....
 
 
 35
 ... Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition.
 
 
 36
 Fed.R.Civ.P. 26(a)(2)(B) advisory committee's note. The "sketchy and vague" nature of Kelsey's affidavit forced Uniroyal to depose Kelsey to determine his qualifications and the basis for his opinion. Consequently, the necessity of the deposition frustrated the purposes of the district court's Scheduling Order and today would likewise frustrate the purposes of Rule 26(a)(2)(B).
 
 
 37
 In prior cases, we have upheld rulings by district courts precluding experts from testifying when those experts were not timely disclosed pursuant to pretrial orders and local rules. Harris v. Steelweld Equip. Co., 869 F.2d 396, 399 (8th Cir.), cert. denied, 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989); Blue v. Rose, 786 F.2d 349, 351 (8th Cir.1986). Accord Simplex, Inc. v. Diversified Energy Systems, Inc., 847 F.2d 1290, 1292 (7th Cir.1988); Jenkins v. Whittaker Corp., 785 F.2d 720, 728 (9th Cir.), cert. denied, 479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 296 (1986). By logical extension of these cases, we now hold that the district court did not abuse its discretion in limiting Kelsey's testimony to the content of his affidavit as a sanction for his failure to comply with the district court's Scheduling Order. Because the affidavit and its attached curriculum vitae did not disclose any academic or practical experience in tire manufacture or tire failure analysis, the district court properly sustained Uniroyal's objections as Sylla-Sawdon attempted to elicit such evidence for the first time at trial.
 
 IV. Closing Argument
 
 38
 Related to the previous issue is Sylla-Sawdon's contention that she was prejudiced at trial by Uniroyal's closing argument. She argues that defense counsel made repeated references to her failure to produce an expert witness to testify as to a tire manufacturing defect:
 
 
 39
 [MR. RHODES:] If Mr. Harrison is making all of this up, then why didn't Mr. Pickett put on an expert, a true tire expert.
 
 
 40
 MR. PICKETT: Your Honor, just a minute. I object. I put on an expert.
 
 
 41
 THE COURT: Objection overruled. Objection overruled. It's final argument.
 
 
 42
 MR. RHODES: Why did Mr. Pickett not put on an expert witness to present competent evidence that this tire was defective at the time that it was made?
 
 
 43
 MR. PICKETT: I object, Your Honor, for the record, relating to the Court's ruling in that regard, I take personal exception.
 
 
 44
 THE COURT: Objection overruled.
 
 
 45
 MR. RHODES: Do you recall Mr. Kelsey? He testified briefly on Monday. There is not one bit of evidence in the record from Mr. Kelsey's testimony that this tire was defective when it was made.
 
 
 46
 MR. PICKETT: The same objection for the same reason, Your Honor.
 
 
 47
 THE COURT: Objection overruled.
 
 
 48
 ....
 
 
 49
 [MR. RHODES:] You are not permitted to speculate, under Judge Whipple's instructions, as to what you think Mr. Kelsey might have said had he been permitted to testify on a certain point.
 
 
 50
 ....
 
 
 51
 [MR. RHODES:] Mr. Pickett is required to put on his own proof because he has the burden of proof in this case. The defense does not have the burden of proof. Mr. Pickett has failed to sustain his burden.
 
 
 52
 ....
 
 
 53
 [MR. RHODES:] Since Mr. Pickett has not presented one single witness who told you that this tire was defective and unreasonably dangerous at the time that it was made, there is simply no evidence upon which you can make that finding. He has the burden of proof and he has not carried his burden of proof.
 
 
 54
 (Appellee's App. at 126-28, 138.) Sylla-Sawdon argues that, in overruling her objections to these comments, the district court improperly permitted Uniroyal to draw an adverse inference from its success in preventing Kelsey from testifying as to his opinion. She contends this is reversible error under Missouri law, citing DeLaporte v. Robey Bldg. Supply, Inc., 812 S.W.2d 526, 533 (Mo.Ct.App.1991) ("It is reversible error for an attorney to ask a jury to draw an adverse inference from failure to produce a witness when the witness was excluded on that attorney's motion."), and Calvin v. Jewish Hosp. of St. Louis, 746 S.W.2d 602, 605 (Mo.Ct.App.1988) (similar holding).
 
 
 55
 A Missouri state court might have ruled defense counsel's comments improper under DeLaporte and Calvin. As Uniroyal correctly argues, however, the propriety of closing argument in federal court is a procedural question to be determined under federal law. Vanskike v. Union Pac. R.R., 725 F.2d 1146, 1149 (8th Cir.1984). "Under federal law, considerable discretion is given to the trial court to control arguments." Id. (citation omitted). See also Geimer v. Pastrovich, 946 F.2d 1379, 1383 (8th Cir.1991) (Gibson, J., concurring) ("I have little hesitation in determining that federal law allows counsel more leeway in commenting on the nonproduction of a witness than that allowed under Missouri law.") To constitute reversible error, statements made by counsel in closing argument must be "plainly unwarranted and clearly injurious." Vanskike, 725 F.2d at 1149; Hofer v. Mack Trucks, Inc., 981 F.2d 377, 385 (8th Cir.1992); City of Malden v. Union Elec. Co., 887 F.2d 157, 164 (8th Cir.1989). We will not disturb a trial court's ruling unless the court abused its discretion. Vanskike, 725 F.2d at 1149.
 
 
 56
 We see nothing improper in Uniroyal's closing argument. Uniroyal reminded the jury that Sylla-Sawdon had the burden to show a tire manufacturing defect and that she failed to do so. This was proper argument. Defense counsel's remark, "Why did Mr. Pickett not put on an expert witness to present competent evidence that this tire was defective at the time that it was made?" can reasonably be interpreted to postulate that Sylla-Sawdon might have carried her burden of proof if she had called any competent expert to testify. Given this plausible interpretation of the remark and the district court's broad power to control closing argument, we are not prepared to say that defense counsel's comments were "plainly unwarranted and clearly injurious." See Vanskike, 725 F.2d at 1149; Putnam v. DeRosa, 963 F.2d 480, 487 (1st Cir.1992). We hold that the district court did not abuse its discretion in overruling plaintiff's objections.
 
 
 57
 Sylla-Sawdon also argues that the district court erroneously precluded her attorney from arguing in closing that Uniroyal's experts failed to conduct any tests on the damaged tire. Uniroyal contends that the district court prohibited plaintiff only from arguing in closing that Uniroyal's expert failed to conduct destructive tests on the tire. Because Sylla-Sawdon has not provided a transcript of her counsel's argument and the district court's ruling on this issue, we are precluded from meaningful review. See Fed.R.App.P. 10; Schmid, 827 F.2d at 386.
 
 V. Cumulative Error
 
 58
 Finally, Sylla-Sawdon argues that the cumulative effect of the district court's erroneous rulings on the preceding issues requires us to reverse this case and remand for a new trial, citing United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir.1990), and Faught v. Washam, 329 S.W.2d 588, 604 (Mo.1959). As Uniroyal argues, there can be no accumulation of error to weigh where we find no error in the district court's rulings. Therefore, we reject this final claim as meritless.
 
 
 59
 Accordingly, the judgment is affirmed.
 
 
 
 *
 The HONORABLE LAWRENCE L. PIERSOL, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable Dean Whipple, United States District Judge for the Western District of Missouri
 
 
 [2]
 The tire that failed was also a Uniroyal "Big O, Legacy" tire. It was preserved following the accident
 
 
 [3]
 The affidavit reads in its entirety as follows:
 I, H. Boulter Kelsey, Jr. state that it is my opinion the subject Big O tire was defective in manufacture.
 The defect resulted from improper vulcanization which led to air build up between components of the tire resulting in rapid deflation. This rapid deflation caused the accident to occur.
 There was no evidence examined indicating that the tire had been run either under or over inflated nor was there any damage associated with a road hazard found.
 The data I relied on in forming this opinion was the physical examination of the tire in question and the police report.
 The exhibit which supports my opinion is that of the tire in question.
 I have attached my resume outlying [sic] my qualifications as well as a list of other cases in which I have testified as an expert at trial or in deposition within the preceeding [sic] five (5) years.
 
 
 [4]
 Additionally, Uniroyal argued that Kelsey's opinion should be excluded under Daubert v. Merrell Dow Pharmaceuticals, Inc., --- U.S. ----, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), because his methodology is not recognized in the field of tire failure analysis. We need not reach this issue
 
 
 [5]
 At a bench conference, the district court explained its rulings:
 Gentlemen, pursuant to that rule, that affidavit is supposed to be complete in and of itself. Everything he, what he relied on, and what he used as a basis of his opinion; and the basis of his opinion has got to be his experience and knowledge in testing tires and his experience and knowledge in being a mechanical engineer, and not his experience and knowledge in racing cars.
 He has performed no test, according to the affidavit. We have no information that he has ever tested anything on tires to determine what characteristic that tire demonstrates when it is run under inflated or over inflated.
 He has stated nothing in his affidavit to show that he is familiar with the vulcanization process and whether there was a proper vulcanization or an improper vulcanization. The purpose of that new rule [Fed.R.Civ.P. 26(a)(2)(B) ]--you are misreading--702 is only a part of it, but the rule is intended that the affidavit and the basis for his opinion, should be complete in and of itself.
 This man has not shown that he is qualified, that he has ever done any tests on tires within his affidavit and in his curriculum vitae. That's why I am not putting his opinions in.